l Good morning, Your Honors. May it please the Court, Daniel Volchok for the plaintiffs. Our equal protection and due process arguments largely boil down to a single question. Can the government keep people in jail pretrial when it has shown no good reason for doing so? Defendant's answer is yes. The 14th Amendment allows the government to keep arrestees locked up pretrial, no good reason, for days, weeks, or even months. There are two basic problems with that answer. First, the Supreme Court rejected it in Bearden v. Georgia, as did this court on Bonk in Pugh v. Rainwater. Both courts held that detention is constitutional only if it is necessary to serve the government's interests. In other words, if the government has a good reason. Second, defendants have never explained why the government should be allowed to detain people pretrial without good reason. And I submit their answer does not make sense, and here's why. We know from the District Court's unchallenged factual findings that pretrial detention inflicts enormous harm. Loss of jobs, loss of housing, lack of access to medical care, inability to care for young children and others, and so on. So very significant harm, and not just for the people arrested, but also for others. And there is no benefit that could possibly outweigh that harm, because we're talking about situations in which detention is not necessary to serve the government's interests. We have acknowledged throughout this litigation that if it is necessary, if the government can show a good reason, then it can detain people pretrial, even through the use of secured money bail. Counsel, this is your substantive due process argument? No, Your Honor, it's actually both. So we have both, as you suggest, a pure substantive due process argument, principally under the Supreme Court's decision in Salerno, and then we have what I call our Bearden and Rainwater argument, which is about wealth-based detention. So an equal protection, substantive due process hybrid is how the Supreme Court has described it. So here I've been talking about both arguments, and the... You got some relief below? Correct. With the injunction? Correct. And I guess I want you to explain to me this substantive due process argument, which is different from the argument that was made in O'Donnell. Correct. What relief are you seeking that would look different from the relief you've already obtained? So it's actually the same answer for both our Salerno and our Bearden and Rainwater claim, Judge Graves, but the answer is an injunction that tells defendants not to detain people pretrial unless a court has found that doing so is necessary to serve the government's interests, unless the government has demonstrated that it has a good reason. Now, to go to your question, Judge Graves, the district court agreed with us that defendants' bail practices are unconstitutional under Bearden and Rainwater. Set aside, if I can, for just a moment, Salerno, the pure substantive due process argument. But the court then issued an injunction that does not remedy that violation. I mean, the violation, to be clear, the violation is as O'Donnell described it. Take two arrestees who are absolutely identical, except that one is rich and one is poor. Under Dallas's bail system, the district court found, the rich arrestee will go home pretrial, the poor one will be locked up pretrial. So differential treatment. The injunction the district court issued allows defendants to continue with precisely that practice as long as they provide a hearing and individualized consideration. Now those things— Wasn't that the relief that was obtained in O'Donnell? So this court in O'Donnell issued what it called a sample injunction, and it expressly stated that that injunction was not even binding on the district court. So it labeled that injunction— It wasn't binding, but the court did say that this would—that an injunction consistent with this would meet constitutional standards. So I think to quibble with exactly how the injunction was put in O'Donnell I and approved in O'Donnell II, with some fairly significant changes in what Judge Rothenthal did on remand in O'Donnell, I think to quibble with that is not to give it sufficient weight. And my concern about your position, to pick up a little bit on what Judge Graves has said, it is certainly set out in the position. It's not just to have a hearing, but there is supposed to be a finding by the judge who is involved at the hearing. In fact, there is no substitute in this case, despite the indigency. There's no way to condition the release that would be adequate. And it seems to me that what you are seeking, though, is a case-by-case judicial review, which is the extra feature that was not given in O'Donnell for anybody who is being detained solely because he cannot meet—two reasons—solely—two reasons solely—two reasons. One, because he cannot—he's indigent and can't meet the cash bail. And secondly, there is no alternative condition that will satisfy the needs set out in the injunction in O'Donnell. And it seems to me what you want us to do here is provide some mechanism for reviewing that decision in court. Is that a fair statement? No, Judge Southwick. We have been very clear that if a court, a state court, were to provide the finding that we submit the Constitution requires to make that finding—that is, that no alternative to detention would satisfy the government's interests—it is our position that a person dissatisfied with that finding could not go back to federal court to ask the federal court to review the substance of that finding. Any review of the substance of that finding would have to make its way up through the state court system. But, Judge Southwick, I think I have to disagree. The injunction does not require a court to conclude that there is no alternative to detention. That is what we requested, but the district court declined to make that finding. Now, we submit— What is the difference from what you want? And the decision-maker must provide written factual findings on the record explaining the reason for the decision. And the decision is why the person is being detained because he can't meet cash bail. Well, right. So the person under the injunction, the decision-maker, could say, I believe that is simply the appropriate amount given all the circumstances, given your criminal history, given— You can have shortcomings by district judges and Fifth Circuit judges at times in explaining themselves. But certainly my sense of what O'Donnell was authorizing and what Judge Godbee ordered, in this case picking up on it in identical language, I assume—it looks very similar—is that the decision-maker is supposed to explain why this is the only alternative. And if the decision-maker doesn't do that, there's a mechanism for following up on that on a weekly basis and whatever else. It's not as robust a mechanism as you would like. So help me with this. Why isn't that more or less already been resolved? We don't believe it has, Judge Southwick. If this Court were to conclude that the injunction in essence says, and this Court were to make clear, that detention based solely on indigence is constitutional only when a court has found that it's the only available alternative, that would certainly satisfy us. We do not read the injunction to say that— I keep cutting you off, and I'm sorry— No, it's not. I'm here to answer the Court's questions. But it does seem to me that what—as I read the O'Donnell opinion anyway, it is setting that up as the reason or the situation in which somebody who cannot meet cash bail is being detained for that reason, that the justification for it is that there is no alternative. And if a district—whatever, I get my judge titles in Texas confused, whatever they are—if that full decision isn't explained, then that's a shortcoming in that decision. But I read the injunction as requiring that, and I don't see a reason that individual judges making these hundreds and thousands of decisions may not always articulate them correctly. I don't see that as a reason to change the injunction. But we are not attempting to quibble with the manner in which state court judges carry out their duties, and I certainly cannot speak for the defendants. They will be up here shortly. But they have briefed this case based on the argument that there is not a requirement of the finding that I've been saying here is required under the Constitution. They say, for example, in their principle and response brief of the felony judges on page 55, that extended pretrial detention is permissible so long as a finding of probable cause has been made. That's their position. So again, I think the parties are in agreement on what the injunction says and doesn't say, but by all means, we would certainly be satisfied if the Court were to affirm what we think is clearly necessary under Bearden and Rainwater, which is that detention based solely on inability to pay or, in fact, any form of pretrial detention. The ability to pay is, as I said, the Bearden and Rainwater violation, but we also have our Salerno claim. If this Court were to make clear, yes, that is what Bearden and Rainwater clearly require, that would certainly satisfy us. We do not read the injunction to say that, and defendants apparently do not either. So that's why I've been raising these issues. I'm concerned that Judge Smith's opinion that set aside Judge Rosenthal's four new conditions, I forget what the number is, 7, 8, 9, whatever the fourth number was, it does seem to me that he was saying that Judge Rosenthal went too far in saying that if there is, that basically people would need to be released if someone with money and somebody without money, if they were in that same situation with the same need to be detained, but if somebody had cash bail, could post the bail, and somebody without cash bail could not, then in that situation the person with the injunction had to be released, and Judge, the panel wrote in that case that that is improper. That goes beyond the constitutional obligations of what we are dealing with in O'Donnell. How does that apply, that particular analysis? Is it your position that the government, that the apologies in this case, are arguing for something different than what Judge Smith said in O'Donnell probably number two, I guess it was? O'Donnell two. So I speak with some trepidation when I try to say what the defendant's position is, but I know what their arguments are, and they can clarify. So O'Donnell two was talking about the 48 hours of detention prior to the bail hearing. So it was different than O'Donnell one, and that was its reasoning for applying rational basis review rather than heightened scrutiny. But to be clear, it has never been our position, and this is what O'Donnell one held, it has never been our position that there is an absolute right to release, that the government can never detain anyone pretrial, or even that it can't discriminate on the basis of wealth in detaining people. But you would agree with O'Donnell two that it was improper, or at least it went beyond the constitutional requirements, to require anybody who was similarly situated with the need for some sort of restraint that cash bail might apply, that, and I think that may have been condition seven, but whichever one it was, if people were similarly situated and the person with money would be let out and the person without money would not, that Judge Rosenthal ordered the indigent had to be released as well. That goes further, you're saying, than your argument goes. No. Well, to be clear, the government can do that if it satisfies heightened scrutiny, right? The government can discriminate on the basis of race, gender, religion, but it has to meet the applicable level of judicial scrutiny. Now, the debate, so to speak, between O'Donnell one and O'Donnell two was the applicable level of scrutiny. O'Donnell one held, and we submit this is necessary under Bearden and certainly Rainwater, that heightened scrutiny applies because you're talking about wealth-based detention. O'Donnell two said, when you're rational basis review applies. Now, we don't think that's... You're referring to Bearden and Rainwater. Those cases have to do with fines. Is that right? Well, not Rainwater. The Bearden trilogy, that is Williams, Tate, and Bearden, the three Supreme Court cases, were all about post-conviction. Let's talk about that trilogy. They have to do with fines. Yes. Those were post-conviction cases, and the court said the government may have legitimate interest and it can lock people up based solely on inability to pay a fine if a court finds that no available alternative... We're talking about pre-trial detention. Presumptively... In bail. Exactly. And that's what this court in Rainwater... And the cases on which you're primarily relying, at least with regard to this aspect of your argument, all have to do with fines. No. Rainwater was an en banc court. This court, sitting en banc in Pew versus Rainwater, took Williams and Tate, Bearden came later, but the first two in the Bearden trilogy, and said those same principles apply pre-trial. In fact, the court in Pew said, it's all the stronger because we're not talking about people who have been convicted and thereby enjoy a diminished right to personal liberty. These are people who are presumptively innocent. They've been accused only. So the principles, the court in the en banc court said in Pew versus Rainwater, are A for Shiori. And of course O'Donnell reached the same conclusion. The similar arguments were made in O'Donnell that Bearden was post-conviction, and the O'Donnell court said, well, but this court, sitting en banc in Rainwater, applied those principles. We are bound by that analysis. And the same, of course, is true here. Now, Your Honors, I do want to talk briefly, if I can. The defendants argue as to our substantive due process argument that that had to be brought under the Eighth Amendment rather than under the Fourteenth Amendment. They actually make that same argument as to our Bearden and Rainwater claim, but I don't propose to linger on that unless the court has questions, because O'Donnell faced and rejected that same argument. But it should be rejected also as to our substantive due process arguments, and two points make that clear. First of all, Graham versus Conner and all of the other cases that the defendants rely on to make this argument say that what's prohibited is a claim that would expand the contours of substantive due process. And second, in Foucher versus Louisiana, the Supreme Court held that pre-trial liberty, or freedom from not pre-trial, but freedom from physical restraints on liberty, have quote-unquote always, that are part of the substantive due process clause. So there could not be any expansion of substantive due process. And again, that just makes perfect sense as far as why Salerno, encountering a claim just like ours, addressed it under the Fourteenth Amendment as well as under the Eighth. This is a liberty claim, pre-trial liberty. It is the Fourteenth Amendment and not the Eighth Amendment that provides a textual source of protection for liberty. Last point I want to make on our appeal, Your Honors, and to the extent I have time, I'll about the implications of accepting our claims. And the reason I submit this Court needs to put those aside is that what we seek has been the law in the federal system for decades and is also the law in other jurisdictions. So there is a large database, so to speak, experiential database to draw on. And defendants do not point to anything in the experience of those jurisdictions suggesting that the predictions they make about our relief have come true, that judges have lost discretion, that defendants have been automatically released, they can't detain anybody, that there's been an increase in crime. Nothing. What we seek is modest, simply that the government have a good reason to detain someone pre-trial. It is workable. We know that from the experience of the other jurisdictions. And it is required by the Constitution. And the last point I'll make is that we were talking earlier about O'Donnell. O'Donnell makes very clear that Supreme Court and Fifth Circuit precedent require an injunction to remedy the constitutional violation that was found. So it says that in Part 2 of its opinion, it says it at the beginning of Part 5 of its opinion, and it says it in the second to last sentence, it says we remand for the District Court to craft an injunction to remedy the violation it found. Now, just take an analogy from the First Amendment context. If the government was censoring protected speech, it would not suffice for the court to say to the government, give people a hearing and individualized consideration, after which you are free to continue censoring political speech. What would be required would be an order that says, stop censoring political speech unless you satisfy strict scrutiny. Same thing here. What was required, and again if the court is prepared to say that's what the injunction says, and we are satisfied, what's required here is exactly what Bearden says. An order for the government not to detain people based solely on indigence pretrial unless the government satisfies heightened scrutiny, at which point it can do so. But O'Donnell says, citing Fifth Circuit and Supreme Court precedent at the beginning of Part 5 of its opinion, a District Court abuses its discretion if it does not tailor its injunction to remedy constitutional violation it found. Our reading of the current injunction, I think defendants share this reading, is that the And I thought I heard you say what Bearden says about pretrial. We say about pretrial But Bearden doesn't say anything about pretrial, does he? Not pretrial, but it says in order to detain someone based solely on indigence, there has to be a finding that You're just saying Rainwater makes all the principles in Bearden applicable to pretrial detaining. Bearden and O'Donnell, yes. Bearden says that quite clearly. It cites the first two cases, and it says pretrial detention is constitutional only if it is necessary to satisfy the government's interests. Your Honors, I have 20 seconds. I would yield back that time and save it for rebuttal if I may. You don't get it back. I don't get it back. Then let me just, I'll quickly deal with Younger and deal with Prysor and their other arguments later. Younger is squarely foreclosed by O'Donnell. O'Donnell cited the exact same cases they cite here and rejected the exact same Younger argument. Gerstein v. Pugh rejected it. They don't address Gerstein at all on Younger. But O'Donnell was dealing with procedural due process and not substantive due process. It was dealing with a Bearden-Rainwater claim. So it's not just procedural due process, Your Honor. Bearden-Rainwater is a hybrid equal protection and substantive due process. Bearden makes that very clear. Bearden says we are putting a substantive, that's the word Bearden uses, substantive limitation on the government's ability to detain people. So there is a procedural component to Bearden and Rainwater for sure, as there is, can be with any substantive right. But the Bearden-Rainwater right itself is about substantive due process. Thank you, Your Honor. Ms. Neitzel is going to address the Monell arguments, my co-counsel, and the sheriff. I believe she goes next. Yes, my co-counsel is going to address the sheriff and Monell. Thank you. I'm usually a traffic cop up here, but I think that's correct. Good morning, Your Honors. May it please the court, Beth Neitzel for the plaintiffs. As my co-counsel indicated, I will be addressing the sheriff's argument that she may not be enjoined, and then the issue of Dallas County's liability. Now, the district court held here that the sheriff is not a proper defendant under Section 1983 because she does not have municipal policymaking authority. But that reasoning is relevant only to the question of county liability. It has nothing to do with whether the sheriff may herself be enjoined under the statute, so even the sheriff does not attempt to defend the district court's in support of the district court's holding that she may not be enjoined. Now, of course, this court need not address those alternative arguments here. It can simply correct the district court's error and remand to the district court for that court to consider the alternative arguments and the proper scope of the preliminary injunction in the first instance. So I will just briefly address each of those arguments here. First, the sheriff argues that because judges, with few exceptions, cannot be enjoined in their judicial capacity, individuals such as the sheriff responsible for enforcing judicial orders also cannot be enjoined. But that argument ignores the plain text of Section 1983, including the text of the 1996 amendment on which the sheriff's argument relies. Now, that text states that injunctive relief shall not be granted, quote, against a judicial officer for an act or omission taken in such officer's judicial capacity. And as the Ninth Circuit recently held, that language makes clear that Congress did not intend that restriction to apply to quintessentially executive officers like the sheriff. And contrary to the sheriff's suggestion, Your Honors, this argument was before the court in O'Donnell. It was briefed by both the county and plaintiffs there, and this court rejected it by crafting a model injunction for the district court in that case that enjoined the sheriff's. Did the sheriff get enjoined? Certainly, sheriff was mentioned in the injunction. I don't—it gave the sheriff a right. Did it order the sheriff to do anything? I think what you're referring to, Judge Southwick, is that the injunction in that case authorized the sheriff to not enforce any judicial orders. Not enjoining the sheriff. But it also, in another section, required the court—or, excuse me, required the sheriff to, quote, treat the limitations period on certain defendants' holds as beginning to a certain time. So in that respect, it did order the sheriff to take certain action, but it also authorized the sheriff to decline to enforce unconstitutional orders. You read a lot into the change of O'Donnell 1 on rehearing and dropping some phrasing. I read that perhaps there's nothing more than avoiding an issue not squarely needing to be decided. But what else do you have to go on besides O'Donnell itself, in which a sheriff was enjoined in situations at all relevant related to what we're dealing with? Well, certainly, this court recognized decades ago that when it comes to an unconstitutional court order, a sheriff can be enjoined from enforcing that order. That was Doobie-Tallahassee Theaters. And, of course, we cited several district court opinions in our brief since the 19—excuse me, since the 1996 amendment on which the sheriff's argument relies that recognizing in precisely this context that a sheriff may be enjoined from enforcing unconstitutional bail orders that function as de facto orders of detention. And, of course, the sheriff has offered this court no authority in support of her argument that the 1996 amendment altered the longstanding history that permitted sheriffs to be enjoined under Section 1983 from enforcing unconstitutional court orders. Now, the sheriff does have a second argument here, and that is that if she is enjoined, she will have to scrutinize judicial orders to ensure that they comply with the Constitution before enforcing them. Now, that is incorrect. Under the current injunction, just like under this court's model injunction in O'Donnell, under the injunction we seek, the sheriff would need only verify that any de facto order of detention is accompanied by a record showing that an individual assessment was made and an opportunity for formal review was required—or, excuse me, was provided. Certainly, the sheriff would not need to independently assess the correctness of the individual assessment. Now, turning to the issue of Dallas County's liability, the district court held that both the felony and misdemeanor judges acted as county policy makers in promulgating the bail schedules at issue here. That holding is correct, and just as in O'Donnell, the analysis is straightforward. McMillian says that in assessing municipal liability, a court's task is to determine whether the relevant actors—here, the felony and misdemeanor judges—speak with final policymaking authority for the county, quote, concerning the action alleged to have caused the constitutional violation at issue. Now, here, that action is the promulgation and maintenance of the bail schedules. And there is no question that under state law, both the felony and misdemeanor judges speak with final policymaking authority for Dallas County when it comes to those schedules. I'm running out of time here, so I will just point the chapter titled Administration by County, which states that the felony and misdemeanor judges in each county shall, by majority vote, adopt local rules of administration. That's section 74093, and we would submit that that essentially decides the McMillian question for this court, as this court said in O'Donnell. Thank you. You were too eager a few minutes ago. I apologize for my eagerness, Your Honor. No problem. Thank you for your courtesy. I'm wearing two hats here at the podium. First, I want to focus on the argument that we've made as an appellee for the judges of Dallas County that there is no substantive federal right or liberty interest defined under the 14th Amendment that's superior to the liberty interest that was recognized in O'Donnell 1, which is based on traditional Texas bail law. And I also want to argue under that point that the 8th Amendment interests in excessive bail, the protections against excessive bail under the 8th Amendment, means that this 14th Amendment substantive due process claim has no legal merit. I also want to wear the hat of a cross-appellant and argue that Dallas County, our client, is not liable for the judicial acts of state judges in Dallas County and that it's not liable for the policymaking of state judges in Dallas County under this court's precedent. And I think the easiest focus of the substantive due process arguments that the court expressed some unease about is that the 8th Amendment is the federal guarantee against excessive bail. Under Supreme Court precedent and under this court's precedent, excessive bail is defined as bail that isn't reasonably calculated to compel the appearance of the accused or the arrestee at trial. The cases that uphold that standard recognize that the state has a separate interest in compelling the appearance of an arrestee or an accused at trial that focuses not just on the interests of the arrestee, but it also focuses on the interest of the justice system, the Texas justice system in this case, of having someone compelled to appear at trial because there is a bail, whether secured or not secured, because there is bail in place. The 8th Amendment governs excessive bail arguments. There is no substantive right to due process that is greater than that 8th Amendment right that this court has repeatedly held. And the fact that the plaintiffs here are resorting to cases that don't deal with bail, as Judge Graves recognized, is very telling. The Williams Trilogy that the plaintiffs talk about deals with a completely different issue. It deals with the issue of whether a state has an interest in holding someone in prison for longer than the maximum sentence for an offense on the ground that that defendant has not paid a fine that was due under their sentence. And it's clear that there is no state interest in holding someone for longer than their prison sentence, which is the holding of all those post-detention cases that the plaintiffs rely on. Those cases are all based on the idea that the state has no interest in exceeding a maximum state-defined sentence. And those cases are distinguishable from this one because in pre-detention situations, confinement is very often necessary regardless of the defendant's ability to meet bail. And that's because the state's paramount interest is having someone appear for trial. And more recently, decisions recognized that states have an interest in public safety that may require that someone be detained. Under Texas law, unlike federal law, but under Texas law, the only way to detain someone who might be a danger to a victim, to the public at large, or to further other interests, money bail is the only tool that's available for doing that, except for exceptions that aren't applicable generally to this case. I think the simplest way to say it is that Texas bail law recognizes that life is complicated. There is no set procedure under Texas law other than the factors stated statutorily. When this court decided O'Donnell, it decided a procedural argument that the accused who were in custody had not had a sufficient procedural opportunity to appear and explain their circumstances and to allow procedural due process to apply to make sure that they had the opportunity that state law should have required them. And in those cases, O'Donnell was decided on procedural due process. This case was as well. Very importantly... Let me ask you, I don't know if your whole most recent section of the argument you talked about the court seemed to be troubled. You may have been talking about what I asked the opposing counsel. What is your position on what the O'Donnell, now this case, injunction requires insofar as the language... What does it require, if anything, of the decision maker when it says the decision maker must provide written factual findings on the record without explaining the reason for the decision? As I read O'Donnell, it sets out the obligations of when you can detain someone and the right to detain someone who can't meet cash bail and if they could, would have been able to be released. But it's not... The remedy here was procedural. The remedy in that case was procedural. Thank you. Are you saying there is no obligation under the injunction that has been applied in this case that was first applied on O'Donnell to actually give that justification? It's just enough that they've had the hearing and written reasons are given? Regardless of what those reasons are? The guy had the orange jumpsuit on and I don't like orange? I mean, I don't make it that bad, but regardless, they give something less than there is no alternative to cash bail in this case that would sufficiently protect all the interests that have to be protected. We aren't at all taking the position that... I'm sorry, what? We are not, Your Honor, taking the position that factual recitations that are written explanation of the facts that the trial judge under Texas law is required to make. We're not saying that that's not necessary. We're saying that there are cases in which money bail is constitutional even when the defendant can't afford to pay bail and that's because there are other state interests at stake that make sure that a defendant will appear for trial or will not be a danger to the community. How would you articulate the difference between your position and what opposing counsel was saying when he was up here? I think our position is the same as the position that this court took in O'Donnell 2 where it said the remedy for this problem is notice and hearing and time to explain to a decision maker, to a trial judge, why this bond isn't necessary for me to appear and why other conditions aren't sufficient. And it's not a mechanical procedure. It's a traditional fact-finding procedure that as a matter of custom judges in Dallas County weren't following before the injunction in this case was entered into. And I would also want to make sure that the court understands that the Dallas judges have not appealed the preliminary injunction that Judge Godbee entered that requires procedural due process under the terms of the O'Donnell case. And in some ways our position is why can't you take yes for an answer? We've given them what they asked for, what the same lawyers asked for in O'Donnell. We have not appealed, Dallas County and the judges have not appealed the guarantees of procedural due process that Judge Godbee put in place with his preliminary injunction. All you lawyers have been involved in this case a lot longer than I, but I must say I'm at a loss, despite your answer and despite what the able counsel on the other side just said, as I understand what he just said, he would be perfectly happy if in fact this injunction required the decision maker to use the analysis that has already been set out in O'Donnell that here's when you can require cash bail even for an indigent. Here's what has to be shown and a fact finder has to make that, decision maker has to make those fact findings. If that was actually required, I understood, and he will correct me if he gets back up here, that would satisfy him. But he does not read the injunction this way. Are you saying you do read this injunction? And if the sheriff sees that these sorts of decisions have not been made, that the orders are not accompanied by a record showing the required individual assessment was made, that the sheriff should not be enforcing an order that doesn't articulate it in some fashion like this? I believe that the injunction articulates in great detail what's required. I'm sorry, what? The injunction does require in great detail what... But it's a detail of there is no alternative to cash bail and here's why. I'm not sure I understand the question. Well, does the order from a decision maker need to say, in order to be compliant with the injunction, why cash bail is required because there's, and the reason is there's no alternative for this individual detainee? There are, I'm not sure that I would say that each trial judge has to state those terms. Well, if he's keeping somebody in who would be released if he could make bail but is not because he's indigent. That's right. And I think O'Donnell says the justification is X. Right. And all I'm asking is that in your position, does this injunction require the decision maker to explain X? That's all it requires. It doesn't require anything beyond that. It doesn't require the recognition of federal substantive due process. It doesn't require anything beyond what? I'm still not sure where... Beyond X. If you're asking me to define X, X would generally be the fact that a bond is required to compel this defendant's appearance or this defendant's confinement to protect public safety or the safety of a victim. There is no alternative. There's flexibility. And I don't believe it's just a semantic point, but I don't believe that that requirement is that the trial judge, as the plaintiffs claim, that the trial judge must determine that detention is necessary. That's not the only focus of the Texas bail statute. There are other interests that are enumerated by the statute that the trial judge can follow. And traditionally that's been required. The problem in O'Donnell and the problem in this case was that there was not sufficient opportunity for an accused to explain that to the trial judge, who is the decision maker. Thank you. If I could turn to my cross appeal. There's really been no answer to our position that Dallas County is not the proper defendant in this case because these are state trial judges who are making judicial decisions that aren't within the area that Dallas County is authorized to act. Dallas County does not have any laws that require trial judges to make bail. It's a matter of Texas law. State law requires that. The county isn't liable because the judges are not municipal policy makers. The only thread that this court cited in O'Donnell 1 to hold that these judges are municipal policy makers is a site to the Texas Constitution, Article 5, Section 24, titled County Officers, which lists officers who can be removed from office by district judges. The first category of people... Let me stop you there. I think you're making an argument for the embanked court. O'Donnell we have to follow. And as wrong as it may have been, and I'm not saying it was, you and we are stuck with it. So you need to tell us some place where O'Donnell hasn't resolved the issue. Well, our briefing... Excuse me, Your Honor. You may not be finished. Our briefing covers the distinctions between this case and O'Donnell. O'Donnell did not have district judges as parties. O'Donnell relied on Article 5, Section 24 to talk about county judges because they could supervise magistrate judges. The facts of this case are different. There are district court judges in this case who under no formulation of the constitutional provision that was cited by the court. Those district judges are not listed in that constitutional provision. So O'Donnell, one, did not talk about district judges. The reason O'Donnell, one, talked about county judges is because they had authority to supervise magistrate judges. In this case, in Dallas County, only the district judges supervised the magistrate judges. The magistrate judges do not report to the county judges. And our position is that O'Donnell is factually distinguishable on those grounds. As you stated, Judge Southwick, our position also is that Article 5, Section 24 of the Constitution is not on point. If it were necessary for this court to hold that it is on point, we would seek en bloc review, candidly. We don't believe it's correct. It causes havoc in Texas for county judges who are statutorily created. It creates havoc for every county in Texas to have county judges who are establishing municipal policy. In some 254 counties, these lawsuits have been filed in county after county. Serial litigation that is creating unnecessary, multifarious, and prolific disputes about something that, honestly, this court's precedent governs all of those counties. Dallas County was sued in this case after O'Donnell had gone far enough along that Dallas County has tried to comply with this court's holding on O'Donnell. The way to litigate these cases is not counted by... Go ahead, Your Honor. I'm sorry. You concede, don't you, that misdemeanor judges are county policymakers under O'Donnell? O'Donnell holds that they're county officers and it cites a provision of the Harris County Government Code provision. Opposing counsel decided the Dallas provision today, but the Harris County provision was what was at stake in O'Donnell. My time is up. All right. May it please the court. My name is Trevor Ezell and I represent 13 of the felony judges in this case. I want to make three points this morning. First, none of the named plaintiffs had standing to bring this suit at all. Second, none of the named plaintiffs had standing to seek relief against my clients. And third, even assuming the plaintiffs had standing, they may not obtain substantive relief that this court already denied in O'Donnell 1 when it remedied the same violations alleged here. I'd like to start with standing. Frank v. Gause establishes that where no named plaintiff has standing, a putative class action goes away entirely no matter how late the federal court discovers the jurisdictional defect. That is exactly what has happened here. There's a corollary principle that I believe plaintiff's counsel misunderstands based on their 28J letter, and that is that courts must assess plaintiff's standing as to each plaintiff, each claim, and each form of relief sought. In their 28J response, they assert that because all of the named plaintiffs were in custody at the time the original complaint was filed, they therefore have standing. But standing to seek what? The pertinent question is whether they have standing to seek the relief that they're seeking. The plainest reading of their complaint, of their briefing in this court, and the injunction the district court actually entered, is that they're seeking declaratory and injunctive relief going to Dallas County's bail policies which can only affect them in a future bail proceeding. That's because at the time they filed their original complaint, they had already been subjected to the bail procedures that they allege are unconstitutional. That runs into 40 years of Supreme Court precedent that holds that a future injury must be certainly impending to confer standing. It's a general principle that we get from cases like Rizzo and Lyons and Clapper and Whitmore. It's a principle that Judge Southwick applied just last year in Glass v. Paxton. But it's a principle that also the Supreme Court has applied in this exact context in O'Shea v. Littleton. That was a 1983 case brought as a putative class action by plaintiffs who had allegedly been exposed to unlawful bail procedures in the past who sought declaratory and injunctive relief going to bail procedures that they might encounter in the future. Interesting, the plaintiffs in that case argued that bail was being unlawfully set in discriminatory fashion against African Americans, that it was being set too high, and I'm quoting now, for financially poor persons unable to afford bail. It would be hard to find a case more on point with this case than O'Shea v. Littleton. And in the face of that complaint, the court concluded the injury here rests on the likelihood that respondents will again be arrested for and charged with violations of the criminal law and will again be subjected to bond proceedings. That, the court said, takes us into the area of speculation and conjecture. That's exactly what plaintiffs claim here relies this court to do, is assume that at some future point they will commit a crime in Dallas County, be arrested, have secured rather than unsecured bail set based solely on a bail schedule at an amount they cannot afford because they still cannot afford to pay it. Your Honor, O'Shea ends this case. That is just as speculative and conjectural as the claim the plaintiffs brought there. Now that's not to say that plaintiffs don't have standing to seek any relief. I readily admit that the plaintiffs might have had standing to seek damages, just like the plaintiff in Lyons. So in that case, the court held that the plaintiff could not seek an injunction against LAPD's chokehold policy that he might be subjected to in the future, but he could seek damages based on being They could have sought damages based on detention that they allege was unlawful, based on unlawful bail procedures that they're challenging here. They could not seek an injunction challenging bail procedures that are not imminently going to occur to them. Unfortunately, they didn't pray for that relief in their complaint. They didn't pray for it for themselves or for the class that they seek to represent. Alternatively, they could have filed a habeas petition on an individual basis, challenging their then-existing custody. Shaw v. Martin Supreme Court held that the juvenile arrestees could have filed habeas applications in New York court on a case-by-case basis to challenge what they allege was unlawful preventative detention. Again, the plaintiffs did not do that here. If what they wanted was a 1983 case proceeding as a class action seeking injunctive relief, they needed to comply with Article III's dictates, and they have not. I want to clarify one other thing about the plaintiffs' 28-J response. They suggest that my argument is keyed to their amended complaint. That's not true at all. I'm asserting that their original complaint lacked standing. This has nothing to do with the amended complaint. The only thing that they suggest they might suggest they had stand to seek something like equitable relief as to their then-existing confinement. They ask for the Gerstein exception to apply because these claims are necessarily fleeting. I think Judge Engelhardt has answered that question better than I ever could in a case he wrote called Barraquatro v. Industrial Personnel and Management Services. In that case, he found that the named plaintiffs lacked standing because a future injury was not certainly impending, and the plaintiffs responded, well, then we should be entitled to the Gerstein exception because our injury here is necessarily time-bound. It comes and goes quickly. And what Judge Engelhardt said is that the issue here is not one of mootness but of standing because the named plaintiff has no realistic threat of future injury and had none when he first became a plaintiff. He lacked standing to bring a claim for injunctive relief. So Gerstein simply has no application here. In that case, the plaintiffs had standing when they filed suit. Their claims became moot as the case was proceeding. Class was certified. The Supreme Court said that class action can survive after the claims have been mooted. Here, the plaintiffs, at the time they filed their original complaint, lacked standing to seek the relief that they're seeking. And insofar as they're seeking relief as to their existing bail orders, that would be barred by Rooker-Feldman. They have no response to that in their 20HA letter. This issue does not occur very often, but I can tell you that SDNY, the District of Kansas, Western District of Pennsylvania have all found that Rooker-Feldman would bar a challenge to bail procedures as applied to an individual arrestee. Essentially, they'd be challenging a state court decision, which is exactly what the Rooker-Feldman Doctrine says they cannot do. Habeas is an acknowledged exception to the Rooker-Feldman Doctrine, but once again they didn't bring a Habeas claim here. The last thing I'll add on that, Your Honors, is I'd be happy to provide supplemental briefing on that if the court finds it helpful. I apologize for bringing it to the court's attention late. I took over responsibility for this case only about three weeks ago and while preparing for oral argument, I discovered the defect and sought to bring it to the court's attention as quickly as I could. I'm happy to answer any questions on that or address the remaining two points. Your Honors, plaintiffs also lack standing to seek relief against my clients because they have not caused their injury and relief against my clients could not redress their injury. Plaintiffs' claim essentially relies on a theory that a facially discretionary policy is being applied in a mandatory fashion by magistrate judges. All that my clients are alleged to have done is issued the bail policy that is purely discretionary on its face. The district court made no findings that the felony judges have in any way strong-armed magistrate judges behind the scenes, that they've told them, treat this as mandatory even though it says discretionary. There weren't even fact findings that the felony judges were aware that this was a pattern or practice that the magistrate judges were engaging in. What factual distinctions are there between this case in Dallas and what we've already addressed in O'Donnell dealing with Harris County? There's been one reference by opposing counsel to perhaps some distinctions that could be made. What would you tell me is despite whatever O'Donnell held, where should we make certain that we are aware of some factual or other distinctions? Your Honor, may I clarify? Are you asking about distinction between how the judges in this case interact with the policy or the difference between the relief plaintiffs are seeking and what ... I would say primarily what I'm looking at on factual distinction insofar as how the bail schedule was developed or what the relationship is among the judges, the different levels of judges? Whatever it is that is a premise for O'Donnell that may not apply here. Your Honor, the misdemeanor judges in O'Donnell 1, I believe, had not only issued the bail schedule that magistrate judges were using to set bail amounts, they were then also conducting their own review of the bail amounts within the 24-hour hearing. No, Your Honor. I believe the misdemeanor judges who issued the policy were themselves ... and so in that case, the case for acquiescence was much stronger. You had the people who issued the policy also going in and reviewing those bail decisions and then either acquiescing in them or changing in them. In this case, there's no allegation that the felony judges have reviewed the bail orders and our argument is that they would lack jurisdiction to do so. Is there an issue of acquiescence in one case and not in the other by a higher level judge? Acquiescence in what is being done by the magistrate judges? I think that is a factual distinction between this case and O'Donnell, yes. The remaining few minutes, Your Honor, I'd like to address plaintiff's appeal and I want to clarify one thing at the outset. A question that both Judge Graves and Judge Southwick asked about what exactly are plaintiffs seeking. My understanding and I'm sure I'll be corrected on rebuttal if I'm wrong is that they are seeking a substantive finding not a finding from the court but a finding that is specific that a person cannot be held in custody unless the state satisfies something like strict scrutiny unless there is no alternative to serve a compelling state interest. Now I read both the text of the model injunction in O'Donnell 1 and the injunction that the district court entered here to require only a finding as to the reasons for confinement and the method of review of that decision is the very next sentence in the injunction which is a follow-on bail review hearing. So the initial court, the initial judge is required to give a finding oral or written in O'Donnell 1. In this case the district court entered an injunction that required a written finding. And then both injunctions require a follow-on hearing to assess whether that reason is a good one. They're asking for a finding that someone may not be held absent a finding that the Constitution no other alternative adequately meets the state's interest. The problem, neither of their two routes get them there. They argue that they have a freestanding substantive due process claim I think Graham v. Conner clearly forecloses that. Supreme Court has reaffirmed the exclusive textual source rule just two years ago in Manuel v. City of Joliet. This court did it three weeks ago in Jones v. Perez in a single paragraph. There's no serious argument that where the Eighth Amendment and the Fourteenth Amendment provide explicit textual sources they can devolve to the green pastel redness of the substantive due process concept. That means this case is exactly like O'Donnell. There is no substantive due process right in view and so the claims at issue here are the very same ones that this court already considered. And O'Donnell said, by the way it considered the And it says individualized procedure is a sufficient remedy to address the constitutional violation there. What's true in O'Donnell is true here. The injunction the district court entered is sufficient here. But more importantly, this court the district court lectures Your Honor, I agree. Their substantive due process argument was not made, but Graham clearly forecloses it. So I think all that's left is exactly what was There was a statement by Judge Clement in O'Donnell 1 about, and I don't know if that's what you were referring to a few seconds ago, that there was no substantive right in view. That's right. But that wasn't a holding and that wasn't an issue directly in front of her. That's absolutely right. That claim was not asserted in O'Donnell 1. The claim is asserted here, but I'm saying it fails because of the explicit textual source rule. So all that's left because they cannot assert a substantive due process claim are the same claims that were issued in O'Donnell. And this court suggested a sufficient remedy under the Constitution. And it's exactly what the district court entered here. Under no circumstances should the court expand the injunction, but I think more importantly the district court lacked jurisdiction completely. And under Arizonans for Official English, all this court has jurisdiction to do is vacate the district court's orders and remain with instructions to dismiss the case. You've run out of time and I was insistent earlier about that, but let me ask you this question because you're addressing, in a way, my biggest concern about the difference between what I heard from the other side and what your side is arguing. It seems to me that to read O'Donnell, it justifies detaining someone who otherwise would not be detained if he were not an indigent based on the analysis in O'Donnell. There are reasons for that. But the injunction itself doesn't express that the decision maker, as that injunction calls it, at least in O'Donnell, maybe here too, has to go through that, has to say that there is no alternative. Though I read the analysis in O'Donnell as that's what the decision space is supposed to be looking at. And there's no appeal of that set out in the injunction other than a mechanism for addressing that over the next and subsequent weeks as reports are made. Is it your position that O'Donnell see if you accept, is O'Donnell saying that that is the analysis the decision maker is supposed to be doing that if you're going to require somebody to be detained solely because he would be released if he could make bail but cannot but is being detained for that reason? That the justification for that is explained in O'Donnell. But whether or not the decision maker has to explain all that in the written reasons or oral reasons is not required that it be explained and it's not reviewable for failure to explain. But are you at least agreeing, I'm finally getting to a question, are you at least agreeing that the decision maker is supposed to be going through that analysis? So yes and no, Judge Southerly. I think I disagree with some of what you said. The key thing being, I think you suggested there is no review of that finding. So the key component in the O'Donnell injunction and the injunction here is that after that finding, the county must provide the arrestee with a formal adversarial bail review hearing before a county judge. That is the mechanism whereby an arrestee may obtain review of the findings that the initial judge made. So I agree that the injunction does not lay out what specific findings a judge must make. What I'm asking is, is the analysis that the judge is supposed to be going through, the analysis that the plaintiffs are saying is the proper analysis, which is that if you're going to detain somebody because he's indigent and can't make cash bail, that is the proper analysis is whether there's no reasonable alternative to that. That is an entirely appropriate thing for the judge setting bail to consider if it's not required under the injunction, Your Honor. Well, it's not required to be stated in findings, but are you not saying that's not the proper analysis? Your Honor, I think my position is that the judge setting bail has to consider a variety of factors, including indigency, and in the spirit with what O'Donnell I commands, that would include considering alternatives if the arrestee cannot afford bail. But the injunction does not require a specific finding. If the judge who sets bail initially says, I set bail at $10 million, knows the person can't afford it, the mechanism for correcting that is the adversarial bail review hearing that follows that finding. I guess that's the answer I'm going to get. Thank you. Thank you, Your Honor. Thank you, Your Honors. I think the arguments just now have confirmed what I thought, which is that the defendants agree with our reading of the injunction that it does not require the substantive finding that we say is required. Judge Shelter, I agree with what I think you said was your reading, which is that what the analysis O'Donnell went through is the analysis that the Constitution requires. I don't read the injunction as saying those need to be set out in a finding. But I was trying to get, with your able opponent over here, all of them being such, whether that's at least, in addition to whatever else has to be considered, that at least it's the analysis that the decision maker, to use the language of the injunction, is supposed to be going through. And I'm not sure what answer I got. Our position is that in order to detain someone based solely on inability to pay, there has to be a finding by the court that no available alternative would satisfy the government's interest. If the court reads the injunction... Let me give you a better answer than I gave in my topside argument, Judge Southwick, as to why we don't read the injunction that way. On 5967 of the Record on Appeal, this is the district court's memorandum opinion, he writes, So what I've been saying, the court disagrees for two reasons, and then he goes on to explain those reasons. Whatever the injunction says, our request to this court is to make clear that before detention occurs based on wealth, or even otherwise under Salerno, but it's two separate arguments, there must be such a finding. And if we got that, then, to take opposing counsel's words, we would take yes for an answer. That is what we are seeking. On standing, Your Honors, the injury in fact argument, as opposing counsel indicated, was first raised 11 days ago. It's not in any of their briefs. The court has a total of 700 words of briefing from the parties on it. We don't think there's anything to it for the reasons we articulated in our 20HA response, but we certainly think if the court thinks there is anything to it, it should direct supplemental briefing before issuing a ruling so that it has the views of the parties. Counsel was just talking about Graham foreclosing our 14th Amendment argument, saying it has to be brought under the 8th. He didn't respond to my arguments. He said there's an explicit textual source of constitutional protection. There certainly is. It's the 14th Amendment. We are bringing a pretrial liberty claim. That's a claim recognized in Salerno. It's a claim recognized in other cases. The word liberty is not in the 8th Amendment. It is in the 14th Amendment. Counsel also talked about public safety being a legitimate government interest. It certainly is, but it is not what is driving any of the policies here. We know that because if any of the individuals who are being detained based on indigence happen to have a couple hundred dollars in their pocket, found it on the street before they were arrested, what have you, Dallas County would release them. Dallas County has made the decision that every member of the plaintiff class, every arrestee, can be released without any threat to public safety if they happen to have some money. So public safety is not what's driving what's going on here. You definitely heard defendants say, Your Honors, that there is no 14th Amendment interest independent of the state law interest. So they say there's no substantive due process right, there's no Bearden Rainwater right. I don't know how to square that with Bearden and Rainwater. Let's focus on Rainwater since it was post-trial. Counsel talked about the Bearden cases being post-trial. That's certainly true, but as we discussed, Bearden is pre-trial. It was not a case out of Texas. It was out of Florida. Of course, this was the former 5th Circuit. There was no issue of Texas law. The en banc 5th Circuit was talking about the federal constitutional rights. Same thing under Salerno. Not a case out of any jurisdiction in the former 5th Circuit or current 5th Circuit. It was out of the 2nd Circuit. Court was talking about a 14th Amendment substantive due process right to pretrial liberty. So those rights exist independent of the rights that exist under Texas law. And then the last point I'll make, Your Honor, he talked about traceability and redressability against the felony judges. That argument is refuted by three undisputed points. Number one, the district court found as fact that the magistrates treat the felony judges' bail schedule as binding. Not challenged on appeal. Number two, the felony judges have the unquestioned power to change the bail schedule in a way that would redress the constitutional violations. They could put on the bail schedule the words, no wealth-based detention absent a finding that no available alternative would satisfy the government's interests. Given the district court's factual finding that the magistrates treat the schedule as binding, that change would redress the constitutional violations. They claim we are arguing they should be interfering in individual bail decisions. That has never been our argument. What is our argument is that they could take steps, that they have the power to take, that would redress the violations. And the third undisputed point that refutes their traceability, redressability, and 11th Amendment arguments, they're not doing it. They have the power to cure the violations, they're not doing it. That's traceability, redressability, and it answers their 11th Amendment arguments. Thank you, Your Honors. Your Honors, counsel said that O'Donnell's county liability holding is inapplicable here for two reasons. First, he noted that the misdemeanor judges here do not have hiring and firing authority over the magistrates. But that factor played no role in the O'Donnell court's analysis, and for good reason. Under state law, and I'm referring to the provision I mentioned previously, the misdemeanor judges are the final policymakers for Dallas County when it comes to the misdemeanor bail schedule. And just as with the felony judge's bail schedule, unchallenged here is the district court's finding that the magistrate judges treat the misdemeanor bail schedule as binding when they apply it. Now, they also mentioned that there was a different provision at play, a different state provision at play that was specific to Harris County. That provision stated that the Harris County judges quote, may adopt rules consistent with state law for practice and procedure in the courts. Here, the relevant provision requires the felony and misdemeanor judges to quote, adopt local rules of administration unquote for their respective courts. There is no material difference. So of course, I think as your honors were alluding to, it is certainly true that this court could resolve the municipal liability question based just on the misdemeanor judges and O'Donnell alone. However, we submit that the two sets of judges are identically situated for purposes of the county liability analysis. Because they acted pursuant to the same delegation of authority when they promulgated the bail schedules, and despite having that authority, both sets of judges, just as this court described in O'Donnell, quote, acquiesced in an unwritten countywide process of setting bail that violated both state law and the Constitution. For that reason, we would submit that the court should affirm the district court's holding that both the misdemeanor and the felony judges are county policymakers here with respect to the policy and practice at issue. Thank you. All right. Thanks to all of you. The briefing and the oral arguments today giving us an opportunity to add to the robust collection of cases on bail procedures in the Fifth Circuit. That is the end of the arguments for today. We are in recess.